COURT OF APPEALS OF VIRGINIA

Present:   Judge Clements, Senior Judges Willis and Annunziata
Argued at Alexandria, Virginia


JAVIEL MEJIA-MARTINEZ

                                           MEMORANDUM OPINION[*] BY
v.      Record No. 1178-04-4          JUDGE ROSEMARIE ANNUNZIATA
                                              MARCH 7, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Paul F. Sheridan, Judge Designate

Heidi Meinzer, Senior Assistant Public Defender, for appellant.

Stephen R. McCullough, Assistant Attorney General (Judith
Williams Jagdmann, Attorney General, on brief), for appellee.


The trial court convicted appellant, Javiel Mejia-Martinez, of rape.  Mejia-Martinez

contends the trial court erred in:  (1) admitting selected hearsay statements the victim made to a

police officer and finding those statements did not violate the Confrontation Clause; and (2) finding

sufficient evidence to support the conviction.  We affirm.

## I.  BACKGROUND

On appeal, we review the evidence in the light most favorable to the Commonwealth, the

party prevailing below, together with all reasonable inferences that may be drawn.  Garcia v.

Commonwealth, 40 Va. App. 184, 189, 578 S.E.2d 97, 99 (2003).  The evidence proved that

Mejia-Martinez was charged in an indictment with raping Sonia Flores on November 15, 2003.

At Mejia-Martinez's March 4, 2004 bench trial, the Commonwealth alerted the trial judge that it

intended to present its case without eliciting details of the crime from the victim, Flores.  It then

called Detective Victor Ignacio as its first witness.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Detective Ignacio testified about the statements Mejia-Martinez made to him during an interview on November 16, 2003, the day after the incident. In Ignacio's account, Mejia-Martinez acknowledged that he and Flores dated for about a year and that the relationship ended several months before the November 15th incident. Mejia-Martinez said he picked Flores up at her building on the evening of November 15, 2003. He initially denied forcing Flores to have sexual intercourse and said the scratch on his face occurred at work. However, he changed that version as reflected in Ignacio's testimony:

> [IGNACIO]: [Mejia-Martinez said t]hey agreed to go behind the Cora Kelley Elementary School located in the City of Alexandria where, according to him, they have been before. Once they were there he began to speak with her and telling her that he loved her and that he wanted to be with her. She told him no.
>
> Then somehow they managed to get into the back seat of the vehicle. He doesn't remember how that happened. Then he said while in the back seat of the vehicle he started telling her he wanted to make love with her and she said not until they get back together.
>
> At which point he said, "Can I touch you and masturbate while I'm doing that?" Then at that point she started saying, "I don't want to do that. Don't do that." At one point [s]he tried to leave the vehicle by using the driver's side door.
>
> Q      Who tried to leave the vehicle?
> A      The victim, Ms. Flores. He remembers pulling her back into the vehicle at which point he locked the door and took her pants and panties off.
> Q      Did he tell you how he did that?
> A      He had her mouth covered with his left hand and pulled her panties and pants off with his right hand at which point while she was struggling then she managed to scratch him in the face.

Continuing, Ignacio testified, "I asked [Mejia-Martinez] if he penetrated her. He said yes, he did." Mejia-Martinez also told Ignacio that Flores bit his shoulder during the struggle. After sexual intercourse was completed, Flores became upset and left the vehicle. Mejia-Martinez brought her back and drove her home. There, Flores broke the windshield wiper control and "began to tear off the glove compartment."

Officer Desiree Maxwell next testified that on November 15, 2003, around 2:45 a.m., she responded to a 911 call reporting an alleged rape. Over Mejia-Martinez's hearsay objections, Maxwell testified that, when she met with Sonia Flores, the 911 caller, Flores was shaking and began crying. Flores told Maxwell that her ex-boyfriend, Mejia-Martinez, arrived uninvited at her house, picked her up in his car, and drove her to a nearby school where they had sexual relations. Flores also told the officer she broke the windshield wipers "and stuff" while trying to get out of the car. Maxwell testified that she began a rape charge investigation after speaking with Flores.

Mejia-Martinez's attorney objected on hearsay grounds to any testimony from Maxwell about why Flores had called the police. He argued that the statements did not qualify as excited utterances because they were made in response to police questioning and were not spontaneous. He further contended the alleged crime occurred at a different location and the time lapse between the alleged crime and the statements foreclosed their admission as spontaneously made statements. Defense counsel challenged the Commonwealth's argument that the statements were admissible as recent complaints on the ground that such statements "cannot come in as independent evidence of the offense, but for the purpose of corroborating the testimony of the complaining witness." The objections were sustained in part and overruled in part.[1]

---

[1] Although the trial court initially felt the statements were admissible as excited utterances, made to Maxwell when she responded to a 911 call, it subsequently altered its earlier stance and found that Flores's statements constituted a recent complaint and admitted them on that ground. In so ruling, the trial court noted that "[w]e have an officer carefully choosing the words because of the bilingual nature of the communication." The trial court explained:

> We now have an elevated sense of the direction of the
> conversation not being spontaneous but being the words selected
> by a trained investigator. Therefore, the excited utterance quality
> and, as I said earlier, the objection was overruled because
> depending on what I heard, I was think[ing] it would go to the
> weight and not admissibility.

Jane Sonnenberg, a sexual assault nurse examiner at Fairfax Nursing Center and Fairfax Trauma Center, testified that she examined Flores on November 15, 2003, at about 6:30 a.m. During the exam, Flores said her mouth hurt. Sonnenberg found an open area inside Flores's lip and photographed it. She also photographed a scratch located above Flores's upper left arm. Sonnenberg conducted a toluidine blue procedure,[2] which indicated the presence of two abnormal abrasions, one inside the vaginal orifice and the other on the labia minora. Sonnenberg considered the abrasions recent injuries. On cross-examination, Sonnenberg conceded it was possible for the dye to adhere and show abrasions with consensual sex.

Suzanne Brown, head of the Sexual Assault Nurse Examiner program at Fairfax Hospital, testified that Flores's vaginal injury was "not a conclusive injury." She explained, however, that it was "consistent with some type of blunt force trauma but we can't say anything more specific than that."

The Commonwealth called Sonia Flores as its last witness. Her testimony was limited to stating her name, the name of Mejia-Martinez, and recounting their prior dating history. Mejia-Martinez asked no questions on cross-examination. In response to questions from the trial court, Flores confirmed that she talked to an Alexandria police officer around 2:45 a.m. on November 15, 2003, and was taken to Fairfax Hospital on that date and examined.

At the conclusion of the Commonwealth's case-in-chief, Mejia-Martinez moved to strike the evidence; the motion was denied. Mejia-Martinez then called Flores as a witness. Flores

---

But now the way this conversation flows, it is not voluntary. It is not a burst. It's not sort of a free flow stream of consci[ousness] type saying of things. It is controlled, disciplined, careful choosing of words between Spanish and English and the words are led by the questioner. That is not an excited utterance at that point. . . . It comes in as a recent complaint of being with the defendant and sex having occurred. That much is in.

[2] Sonnenberg explained that toluidine blue is a dye that adheres to raw, open cells in the genital area. The dye does not adhere to normal skin cells.

testified that she "agreed to have" sexual intercourse with Mejia-Martinez. She acknowledged they argued after having intercourse after which she contacted the police. She stated she called the police because she was "angry at him" and "really jealous." On cross-examination, Flores said that she "lied to" Officer Maxwell and to Detective Ignacio. She conceded telling Ignacio that Mejia-Martinez tried to force her to have sex with him, but testified, "after that I agreed to it." When asked about several specific statements made to Ignacio, Flores repeatedly answered, "I don't remember." Flores denied telling Ignacio that Meja-Martinez admonished her to stop crying because she was not the first woman to have been raped.

In rebuttal, Detective Ignacio related Flores's statement that Mejia-Martinez told her to stop crying because she was not the first woman to have been raped. Ignacio also testified, without objection, that Flores told him she was forced to have intercourse with Mejia-Martinez.

The trial court denied Mejia-Martinez's motion to strike at the conclusion of the presentation of evidence and found Mejia-Martinez guilty of rape.

## II.  EVIDENTIARY ARGUMENTS

Mejia-Martinez makes two arguments regarding the admission of certain hearsay statements Flores made to Maxwell. He contends they do not come within a recognized hearsay exception, and their admission violated his Sixth Amendment right to confront witnesses against him pursuant to the holding in Crawford v. Washington, 541 U.S. 36 (2004). Thus, Mejia-Martinez alleges both a non-constitutional and constitutional error in admitting selected statements.

A.  Hearsay Arguments

Admissibility Under the Asserted Hearsay Exceptions

Discussion

Mejia-Martinez alleges the trial court erred in admitting through Maxwell certain statements attributed to Flores on the grounds they do not come within the hearsay exceptions for excited utterances or recent complaints.  In his brief, Mejia-Martinez confined his challenges on hearsay grounds to the admission of the following statements:  that Flores was with Mejia-Martinez and sexual intercourse occurred; that Flores said she broke items in the car; and, when asked, Flores said the incident occurred at a nearby school and pointed toward Cora Kelley School.  We limit our analysis to the admission of those selected statements.

We first note that defense counsel did not object to Maxwell's testimony that Flores identified a nearby school as the location of the incident and that she specifically indicated, by gesture, the Cora Kelley School.  Thus the trial court never ruled on the propriety of admitting the hearsay statements now challenged on appeal.

"No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  Rule 5A:18.  Accordingly, Rule 5A:18 bars our consideration of this question on appeal.

We assume without deciding that the remaining hearsay statements to which appellant specifically objected and challenges on appeal do not come within the stated hearsay exceptions.  However, we find their admission harmless.

In Virginia, non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached."  Code § 8.01-678.

"In a criminal case, it is implicit that, in order to determine whether there has been 'a fair trial on the merits' and whether 'substantial justice has been reached,' a reviewing court must decide whether the alleged error substantially influenced the jury. If it did not, the error is harmless." Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001).

> In Clay, we adopted the following test for non-constitutional harmless error that was applied by the United States Supreme Court in Kotteakos v. United States, 328 U.S. 750 (1946):
>
> > "'If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand.'"

Rose v. Commonwealth, 270 Va. 3, 12, 613 S.E.2d 454, 458 (2005) (quoting Clay, 262 Va. at 260, 546 S.E.2d at 731-32 (quoting Kotteakos, 328 U.S. at 764-65)).

Applying the stated principles here, we find that competent evidence properly admitted at trial clearly established the facts that Mejia-Martinez claims were established by inadmissible evidence. Before Flores testified for the Commonwealth, Ignacio related the contents of an incriminating statement made by Mejia-Martinez. In it, Mejia-Martinez admitted having intercourse with Flores and said that Flores began to vandalize the interior of the car after he drove her home. Furthermore, Ignacio testified without objection, in rebuttal, that Flores described the sexual intercourse as forced and against her will and recounted Mejia-Martinez's admonishment to Flores that she wasn't the first woman to have been raped, an implicit admission of the offense. Thus, we find any error harmless.

B.  Alleged Confrontation Clause Violation

On April 15, 2004, six weeks after the trial court found Mejia-Martinez guilty, he appeared for sentencing.  Mejia-Martinez moved to set aside the verdict "in light of the . . . [decision in Crawford v. Washington, 541 U.S. 36 (2004),] from the United States [Supreme Court] that came down four days after our trial."  In moving to set aside the judgment, he asked the trial court

> to reconsider its ruling on the hearsay and say that was testimonial.
> At that point in the trial counsel had had no opportunity to
> cross-examine the declarant which would be a confrontation clause
> [sic].

The trial court denied the motion, finding that the limited statements by Flores to Maxwell that were admitted were "not that kind of interrogation which is then used by police later to produce testimony they couldn't otherwise have gotten in the trial and the prosecution itself."

In Crawford, the United States Supreme Court held:  "Where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required:  unavailability and a prior opportunity for cross-examination."  Crawford, 541 U.S. at 68.  The Court further noted that, when the defendant has not had the opportunity to cross-examine a witness, that individual's Sixth Amendment right of confrontation is violated.  Id.

We assume without deciding that Flores's statements in response to Maxwell's questions constituted testimonial hearsay.  However, a Crawford violation does not occur when the hearsay declarant is available and subject to cross-examination.  See Blackman v. Commonwealth, 45 Va. App. 633, 644-45, 613 S.E.2d 460, 466 (2005) (assuming codefendant's hearsay statements to inmate admitted at joint trial was testimonial, its admission did not violate Crawford where the codefendant and inmate testified at trial).

Here, Flores testified at trial for the Commonwealth and the defense and was subjected to cross-examination. Accordingly, the trial court's admission of the statements from Flores through Maxwell that Mejia-Martinez challenges on appeal did not implicate or violate the Confrontation Clause of the Sixth Amendment. See id.

### III. SUFFICIENCY OF THE EVIDENCE

When considering the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). "In so doing we must '"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom."'" Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954))). The trial court's judgment will not be set aside unless plainly wrong or without evidence to support it. Josephs v. Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (*en banc*).

The evidence showed that Flores made a 911 call for help at 2:15 a.m. Officer Maxwell responded to the scene and found Flores emotionally distraught. After speaking with Flores, Maxwell initiated a rape investigation. Scientific evidence showed evidence of blunt force trauma in and around Flores's vaginal area. Describing the incident, Mejia-Martinez admitted pulling Flores into his vehicle, locking the door, covering her mouth with his left hand, removing her clothing with his right hand, and having intercourse with her. He admitted Flores scratched his face when she tried to flee, after first claiming he incurred the scratch at work. After he

drove her home, he told her she was not the first woman to be raped. In a statement to Detective Ignacio, Flores said the intercourse was forced and non-consensual.

The evidence was sufficient to support the trial court's finding that Mejia-Martinez was guilty of rape. The trial court, as fact finder, was under no obligation to believe Flores's testimony that the reason she contacted the police, went to the hospital, underwent medical tests, and lied about being raped was because she was angry and jealous. See Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986) (it is for the trier of fact to ascertain witnesses' credibility, and it is within the fact finder's discretion to accept or reject the testimony offered).

The Commonwealth's evidence was competent, was not inherently incredible and was sufficient to prove beyond a reasonable doubt that Mejia-Martinez was guilty of rape.

Accordingly, Mejia-Martinez's conviction is affirmed.

Affirmed.